UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARELL M. JOHNSON,<br><br>    Petitioner,<br><br>  v.<br><br>J.W. HAVILAND, Warden,<br><br>    Respondent.<br>_____ / | No. C 09-4265 MHP (pr)<br><br>**ORDER DENYING HABEAS PETITION** |

## INTRODUCTION

Jarell M. Johnson filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. The matter is now before the court for consideration of the merits of the habeas petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

An information filed on April 8, 2005 charged petitioner with the murder of Maria Catherine King. On December 6, 2005, the district attorney filed an information also charging Derrell Lamont Morgan with King's murder. The trial court granted the district attorney's motion to consolidate the two cases. The evidence of the crimes presented at trial was described at length in the California Court of Appeal's opinion. Resp. Ex. F, California Court of Appeal Opinion ("Cal. Ct. App. Opinion"), at 3-16.

At approximately 1:00 a.m. on February 8, 2005, Herbert Miller saw two figures in dark clothing kick something in the middle of the street. The figures took turns kicking the object, about three to four times each. Miller saw them walk away, but one of the figures ran back and jumped on the object with both feet. Miller called 9-1-1. Police and paramedics

responded to the call and found Maria King lying in the road, unresponsive and with significant trauma to her head. King never regained consciousness and died nearly two weeks later. An autopsy revealed the cause of death was "[b]lunt trauma to the head . . . from multiple blows." Cal. Ct. App. Opinion at 3.

Police officers were dispatched to search for suspects in the neighborhood. Officer Stanley Libed saw petitioner dressed in dark clothes in the area. Libed stated he needed to speak with petitioner and handcuffed him. Libed did not initially think petitioner was involved in the offense due to petitioner's calm demeanor, and walked petitioner a few steps towards the police lights to explain why he had stopped him. At that point, they were a couple of blocks from the crime scene. Libed glanced down at petitioner's shoes with a flashlight because he knew the offense involved kicking. Libed was surprised to see blood on the shoe, but he did not tell petitioner to look at the shoe, nor did he shine the light on the shoe again or ask questions about the blood. Almost immediately, petitioner stated, "'I kicked some lady back there. She grabbed my hair.'" Cal. Ct. App. Opinion at 4. Petitioner made additional incriminating statements later. By noon the next day, he had made incriminating statements five different times. (The particulars of the statements are covered in the *Miranda* discussion later in this order.)

DNA analysis of blood on petitioner's shoe showed the blood to be consistent with that of the victim. The prosecution also introduced testimony from Maurice Thompson, who was a victim of a prior similar incident where petitioner smashed and threw bottles at a homeless person.

A jury convicted petitioner in Alameda County Superior Court on September 25, 2006 of second degree murder. On November 17, 2006, the trial court sentenced petitioner to 15 years to life in state prison. Petitioner appealed his conviction. The California Court of Appeal affirmed the conviction and the California Supreme Court denied review.

Petitioner then filed this action. As grounds for federal habeas relief, petitioner alleged: (1) the admission of his incriminating statements to law enforcement violated his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966); and (2) his federal constitutional right

2

to present a defense was violated when the trial court required that he be jointly tried with a co-defendant and then admitted a redacted version of his statement to police that was misleading. The court ordered respondent to show cause why the petition should not be granted. Respondent filed an answer. Petitioner did not file a traverse.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Alameda County, California, within this judicial district. 18 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. *See* 28 U.S.C § 2254(b), (c). The parties do not dispute that the state judicial remedies were exhausted for the two claims in this petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

A.   *Miranda* Claim

In order to protect the Fifth Amendment privilege against self-incrimination, certain warnings must precede any custodial interrogation, which occurs whenever law enforcement officers question a person after taking that person into custody, or otherwise significantly deprives a person freedom of action. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily on the perceptions of the suspect, rather than the intent of the police." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). This definition of interrogation extends only to words or actions that the police "should have known were reasonably likely to elicit an incriminating response," and not to those that produce unforeseeable results that are incriminating. *Id.* at 302. If a suspect in custody voluntarily makes spontaneous statements that are not in response to police words or conduct, those statements are admissible. *Miranda*, 384 U.S. at 384. With a few exceptions not relevant here, any statements obtained in violation of *Miranda* may not be

4

used by the prosecution at trial. *Id.* at 479.

Here, petitioner five times made incriminating statements: three when he was in the area of the crime and two more at the police station. Since Officer Libed handcuffed petitioner immediately upon speaking with him, petitioner was effectively in custody. Thus, the analysis centers upon whether police subjected petitioner to interrogation or its functional equivalent.

### 1. Statements at Crime Area

Petitioner's first incriminating statement was: "'I just kicked some lady back there.'" Cal. Ct. App. Opinion at 12. He made that statement just after officer Libed moved him a few steps closer to see the police lights at the crime scene and shined a flashlight on petitioner's shoes on which there was blood. Officer Libed did not and should not have known that these actions would have been reasonably likely to elicit an incriminating response from petitioner. Officer Libed moved petitioner a few steps closer to the police lights, but he and petitioner were still a couple of blocks from the crime scene. Using the flashlight was reasonable conduct given Libed's knowledge that the crime involved kicking and because the incident occurred in the middle of the night. When Libed unexpectedly saw the blood on the shoe, he did not physically or verbally react to what he saw, he did not look at petitioner's face for a reaction, and he did not ask questions about the blood or refer to it in any way.

The state appellate court found that the officer's non-verbal conduct was not the functional equivalent of interrogation. Cal. Court App. Opinion at 12-14. The act of "checking [petitioner's] feet with his flashlight was simply normal conduct for a police officer rather than an action that Libed should have known would prompt [petitioner] to respond." *Id.* at 13. The movement of petitioner "a few steps toward police lights" was not the functional equivalent of interrogation. *Id.* 13-14. Not only were the individual acts not improper, the combination of the two actions did not add up to the functional equivalent of interrogation. *Id.* at 14.

The state appellate court correctly identified *Innis* as the controlling Supreme Court

5

authority and reasonably applied it in concluding there was not an interrogation or its functional equivalent. Moving petitioner a few steps in the direction of police lights, while still a couple of blocks away, was also not tantamount to a coercive tactic that was the functional equivalent of interrogation. *See Innis*, 446 U.S. at 300 (interrogation must " reflect a measure of compulsion above and beyond that inherent in custody itself"). Illuminating the shoes without comment or commotion also was not the functional equivalent of interrogation. Even after seeing the blood on petitioner's shoe, Libed did not transport petitioner to the crime scene or say anything about the scene once they were in view of it. Petitioner spontaneously offered his first incriminating statement without interrogation or its functional equivalent. His voluntary statement was admissible under *Miranda*.

Petitioner's second statement was: "'I kicked her ass. She freaked out on me.'" Cal. Ct. App. Opinion at 14. He made this statement after Officer Cocke joined Officer Libed and him on the street near the crime scene. Libed informed Cocke about the blood on petitioner's shoe and petitioner's first incriminating statement. The exchange occurred solely between the two police officers; nothing was said to petitioner.

The state appellate court determined that the evidence had not been discussed with petitioner, and there was no "poignant conversation about the evidence that might appeal to the suspect's sensitivities." *Id.* at 14. The court also determined that the two officers "could not reasonably have known that this brief discussion of the situation between themselves would later prompt [petitioner] to make incriminating statements." *Id.* Thus, this second statement was not the product of the functional equivalent of interrogation and was admissible. *See id.* at 14-15.

The California Court of Appeal's rejection of petitioner's claim about this statement was not contrary to or an unreasonable application of clearly established federal law. When petitioner made his second incriminating statement, it was not in response to any police questioning or action. The police were not even talking about the assault when petitioner made the statement. The officers did not engage in any actions that were reasonably likely to elicit petitioner's second statement. *Cf. People v. Ferro*, 63 N.Y.2d 316 (N.Y. 1984)

(conduct of the police in placing furs which had been stolen from a murder victim's residence in front of the cell in which defendant, a suspect in the crime, was being detained constituted interrogation). There was no interrogation or functional equivalent of interrogation before the second statement was made. His spontaneous statement not in response to police words or conduct was admissible under *Miranda*.

Petitioner's third statement, "'I beat the shit out of her,'" was made after he was verbally advised of his *Miranda* rights after an eyewitness field show-up was conducted. Cal. Ct. App. Opinion at 15. When he made this incriminating statement, he was waiting to be transported to the police station.

The California Court of Appeal rejected the challenge to this statement. There was no problem with the verbal *Miranda* warnings given to petitioner. "Nor was there any apparent connection between appellant's statement and any police questioning, conversation, or action. Because volunteered statements, offered both before and after *Miranda* admonitions, are not barred by the Fifth Amendment" the trial court properly ruled that this third statement was admissible. *Id.*

The California Court of Appeal's rejection of petitioner's claim about this statement was not contrary to or an unreasonable application of clearly established federal law. Petitioner volunteered his third statement after receiving adequate *Miranda* warnings, and it was not in response to any police words or conduct. Libed had not even asked a question. Admitting petitioner's third statement at the detention site did not violate his privilege against self-incrimination.

2. Statements at Police Station

Petitioner's fourth and fifth incriminating statements occurred after arriving at the police station. There, Officer Libed "repeated the *Miranda* warnings and gave [petitioner] a waiver form with his rights printed at the top. [Petitioner] signed the statement that was attached to the waiver." Cal. Ct. App. Opinion at 15. Petitioner's fourth incriminating statement was his written confession that he signed that night. His fifth incriminating statement was the videotaped confession he made the next morning to detectives. "While

7

1 Detective Dozier and Sergeant Nonoguchi did not reread the *Miranda* rights before they
2 videotaped [petitioner's] fifth and final statement, Nonoguchi did remind [petitioner] of his
3 rights, and [petitioner] agreed to talk." *Id.*

4 The state appellate court found "no reason to disturb" the trial court's finding that the
5 statement was given after petitioner's knowledgeable and voluntary waiver of his *Miranda*
6 rights. The court also rejected petitioner's argument that the "'initial error cannot be ignored
7 in reference to subsequent events.'" *Id.* "[W]e have not found an initial error, and hence,
8 [petitioner's] fourth and fifth statements, which were proffered after he received *Miranda*
9 admonitions and effectuated a waiver of his rights, were also admissible." *Id.* at 15-16.

10 The California Court of Appeal's rejection of petitioner's claims concerning the fourth
11 and fifth statements was not contrary to or an unreasonable application of clearly established
12 federal law. Having reasonably rejected petitioner's claim that the first, second and/or third
13 statements were obtained in violation of *Miranda*, it follows that the state appellate court
14 reasonably determined that the fourth and fifth statements were not tainted by the earlier
15 events. Petitioner's initial two statements were not made in response to improper police
16 interrogation or its functional equivalent. Rather, they were offered voluntarily and therefore
17 not in violation of *Miranda* mandates. Petitioner made his last three incriminating statements
18 after receiving proper *Miranda* warnings. In doing so, he effectuated a knowing and
19 voluntary waiver of those rights. Accordingly, none of petitioner's incriminating statements
20 were improperly admitted into evidence in violation of *Miranda v. Arizona*.

21 The state court's rejection of petitioner's *Miranda* claim was not contrary to clearly
22 established federal law for AEDPA purposes. *See Williams*, 529 U.S. at 412-13 (state court's
23 decision is not "contrary to" federal law under Section 2254(d)(1) if it applies the correct
24 federal standard). Furthermore, the Court of Appeal reasonably applied the federal standards
25 for custody and interrogation set forth in *Miranda* and *Innis*. Consequently, petitioner is not
26 entitled to federal habeas relief on his first claim.

27
28

B.      Redacted Videotape Evidence

Petitioner asserts that the use of a redacted version of his videotaped interview interfered with his right to present a defense. The usual claim concerning a redacted statement is a Confrontation Clause claim concerning the use of a non-testifying co-defendant's statement. *See Bruton v. United States*, 391 U.S. 123, 126, 135-36 (1968). This is not that kind of claim. Here, instead, the testifying defendant complains that using a redacted version of his own statement impaired his ability to show that he was lying during that statement. That, in turn, allegedly impaired his ability to shift more blame to his co-defendant. Had he been able to do that, he believes it would have been more likely that he would have been convicted of a lesser offense than murder.

1.      Background

As mentioned above, a videotape was made of an interview of petitioner by police detectives the morning after the killing. In the video, petitioner told police that, after getting drunk, he took a bus to Berkeley to "talk to [his] partner . . . . Derrell" who lived in the area. Cal. Ct. App. Opinion at 16. He tried calling Derrell but "his phone was turned off." Cal. Ct. App. Opinion at 16. Petitioner explained he had been walking down the street when he saw some boxes, junk, and a homeless woman. He decided to look through the boxes. When he and the woman both reached for the same box, he tried to knock her hand away but she grabbed his collar and hair. He then beat her. He stated he punched her, kicked her in the head several times, hit her in the face and jaw. At three different places in the interview, detectives tried to elicit information about the other perpetrator involved in the attack. In response, petitioner three times told detectives, "'I was by myself.'" Cal. Ct. App. Opinion at 6. Detectives later learned that Derrell Morgan had been the second attacker.

During in limine hearings, the trial court expressed concerns about portions of petitioner's videotaped statements that might implicate Morgan because petitioner and Morgan were to be tried jointly. The prosecutor and Morgan's counsel requested that the court redact references to Morgan so the jury would not know another person was involved. Petitioner's counsel, in contrast, wanted the entire recording admitted in order to suggest

petitioner not only lied about his solo participation, but also exaggerated the extent of his actions in order to protect Morgan. Petitioner's theory was that, in light of the eyewitness' account that petitioner kicked King just a few times, his videotaped statement that he acted alone was full of exaggerations and lies. The court ordered a series of redactions, which included removing petitioner's statements that he had come to talk to his partner and that Morgan lived in the neighborhood, petitioner's statement that he used a payphone to call Morgan, and petitioner's statement that he was by himself that night. The trial court denied petitioner's motion to sever the trials of petitioner and Morgan. Petitioner then unsuccessfully sought reconsideration of several rulings. Eventually, however, the court agreed to allow petitioner's counsel to question detectives Dozier and Nonoguchi on cross-examination about whether petitioner stated that he was alone three times. Two days later, the court also announced to the jury that certain portions of the videotape were redacted. The court instructed the jury not to speculate as to what may have been contained in those portions, and instructed that at three different points during the interview, petitioner told detectives, "I was by myself."

   2.   <u>Redactions did not deprive petitioner his right to present a defense</u>

The right to present a defense includes "the right to put before a jury evidence that might influence the determination of guilt." *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987). Thus, the erroneous exclusion of critical, corroborative defense evidence violates the right to present a defense. *Washington v. Texas*, 388 U.S. 14, 18-19 (1967). To determine if the exclusion of evidence violated the right to present a defense, the court considers the following factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense. *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir. 1985).

Application of the *Miller* framework indicates that the redactions did not deprive petitioner of the right to present a defense. The probative value of the statements on the central issue was weak. The redacted statements do not demonstrate that it is more or less

10

likely that petitioner was guilty of a lesser offense than that of which the jury convicted him. As the state appellate court found, none of the redactions distorted the manner in which petitioner attacked the victim, or his description of the actual offense. Cal. Ct. App. Opinion at 20. The edits did not transform exculpatory statements into inculpatory ones, as petitioner did not say anything in the redacted portion to lighten his role. Cal. Ct. App. Opinion at 20. The excluded evidence was reliable evidence of what petitioner said, even though he wanted to use it to show his unreliability. The evidence was capable of evaluation by the jury, except that there were Confrontation Clause concerns that required exclusion of the evidence that implicated the co-defendant. Critically, the redactions were not the sole evidence on the issue. Petitioner's counsel had other ways to present the defense theory that petitioner was dishonest in the videotape. Cal. Ct. App. Opinion at 20. In fact, the court allowed petitioner's counsel to ask Detective Dozier and Sergeant Nonoguchi on cross-examination whether petitioner had stated three times that he was alone in attacking the victim. The court also explicitly informed the jury that portions of the videotape had been edited, and that petitioner had said he was alone three times. The jury learned precisely what petitioner sought to have introduced via the redacted statements: that petitioner consistently lied throughout the taped interrogation. Petitioner's contention that the redactions deprived him of essential evidence and the ability to support his defense is unpersuasive. The redactions did not deprive petitioner of the right to present a defense because he had other methods of presenting the same information, which he in fact utilized.

       3.    <u>Any error was harmless</u>

A constitutional error in the exclusion of evidence only warrants habeas relief if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Petitioner contends that if the jury had been allowed to view the videotaped interview in its entirety, he could have more convincingly argued that the events recounted described his co-defendant's actions rather than petitioner's own actions. Petitioner believes that if the jury understood the extent of his lies in the videotape about acting alone, the jury would have discounted the interview and

11

given more weight to other evidence describing his shared role in the crime. Petitioner believes he would have been better able to present a defense of involuntary manslaughter as a result. As noted, however, the court only redacted references to petitioner talking to or calling his co-defendant, the location of his co-defendant's home in the neighborhood, and petitioner's statements that he was alone. None of the redactions distorted his own description of the offense. Admitting the un-redacted version would not have effectively imputed a greater degree of culpability from petitioner to his co-defendant.

The California Court of Appeal found that not only would the redacted material not have assisted petitioner in his defense, there was ample additional evidence that rendered the probable impact of the redacted material on the minds of the jurors negligible. Cal. Ct. App. Opinion at 22. First, the blood on petitioner's shoe was consistent with the victim's DNA, with an extremely remote statistical possibility of error. Second, the eyewitness to the crime stated that petitioner's clothing looked "very similar" to that worn by one of the figures attacking the victim. Third, Maurice Thompson's testimony illuminated a prior similar incident where petitioner assaulted him while he was sleeping on the street. Fourth, petitioner's own incriminating statements before the videotaped interview demonstrated the extent and nature of his conduct. The probable impact of the redacted material, in light of the properly admitted evidence, is negligible. Cal. Ct. App. Opinion at 22.

Even if the redactions violated petitioner's right to present a defense, such an error did not have a substantial or injurious impact on the jury's verdict. The state appellate court's rejection of the claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, this claim does not warrant habeas relief.

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

//
//

**CONCLUSION**

For the foregoing reasons, the petition for writ of habeas corpus is DENIED. The clerk shall close the file.

IT IS SO ORDERED.

DATED: March 8, 2011

Marilyn Hall Patel
United States District Judge